UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFERSON ARLEY ORTEGA BLANCO, | CASE NO. 2:26-cv-02262-DGE |
| Petitioner, | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |
| v. | |
| WARDEN, | |
| Respondent. | |

This matter comes before the Court on Petitioner Jefferson Arley Ortega Blanco's petition for writ of habeas corpus.  (Dkt. No. 1.)  Having reviewed the petition, the return memorandum (Dkt. No. 6), the traverse (Dkt. No. 9), and all supporting materials, the Court GRANTS Petitioner's writ of habeas corpus.

## I    BACKGROUND

### A.  Factual Background

Petitioner is a native and citizen of Colombia.  (Dkt. No. 8-1 at 2.)  He entered the United States at or near Tecate, Texas, on December 6, 2022 "without inspection[.]"  (*Id.*; Dkt. No. 7 at

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

2.)  He was then "encountered" by United States Border Patrol ("USBP") on the United States side of the southern border and "paroled" into the country pursuant to Immigration and Nationality Act ("INA") § 212(d)(5), codified at 8 U.S.C. § 1182(d)(5).[1]  (Dkt. No. 7 at 2.)  It is not clear from the record how long Petitioner was in the country before he was encountered by USBP.  On February 7, 2023, Petitioner was placed on an order of release on recognizance ("OREC").  (*Id.*)  On May 3, 2023, Petitioner was served with a Notice to Appear ("NTA"), which charged him as removable under § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  (Dkt. No. 8-1 at 2.)  He was ordered to appear in front of an immigration judge in Portland, Oregon on June 11, 2024.  (*Id.*)  Since his entry into the United States, Petitioner has been issued a valid Employment Authorization Document ("EAD") and a Social Security Number ("SSN"), which has allowed him to work consistently as a drywall installer.  (Dkt. No. 2 at 2.)  He also has a pending asylum application.[2]  (*Id.*)

On November 6, 2023, Petitioner was charged in Multnomah County Circuit Court with one count of attempted felony assault in the fourth degree, one count of misdemeanor harassment, and one count of misdemeanor assault in the fourth degree, all with domestic violence designations.  (Dkt. No. 7 at 2.)  These charges were ultimately dismissed.  (Dkt. No. 9-1 at 9–10.)  Respondents assert that on May 18, 2026, the Portland Police Bureau arrested Petitioner for unlawful possession and delivery of cocaine.  (Dkt. No. 7 at 2.)  According to

---

[1] Respondents did not provide any immigration documents from Petitioner's initial encounter with USBP or his subsequent parole.

[2] Petitioner asserts that in "the year 2023, Petitioner formally submitted his application for political asylum before the competent immigration court."  (Dkt. 1 at 2.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

Deportation Officer Sooseon Jeon, "[t]he disposition of those charges are unclear." (*Id.*) Petitioner submitted supplemental documentation to his traverse, including the information from the Multnomah County District Attorney, which shows Petitioner was charged with a single count of unlawful possession of cocaine on May 18, 2026. (Dkt. No. 9-1 at 7.)

On June 8, 2026, Petitioner presented to the Oregon Immigration and Customs Enforcement ("ICE") sub-office. (Dkt. No. 8-2 at 3.) Once here, Enforcement and Removal ("ERO") officers concluded Petitioner had been "deactivated from CART due to an arrest by the Federal Bureau (FBI) for narcotics distribution"[3] and that he had "pending criminal charges in the state of Oregon for the crime of Delivery and Possession of Cocaine." (*Id.*) ERO further concluded Petitioner had violated his "OREC and would be taken into custody." (*Id.*) ERO officers drafted an I-200 arrest warrant prior to making contact with Petitioner in the check-in area of the sub-office. (*Id.*) Petitioner was held at the ICE facility in Portland before being processed "as an I-830 change of venue." (*Id.*) Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington on the same day. (Dkt. Nos. 7 at 2; 8-2 at 3.) Petitioner's OREC was also revoked on June 8. (Dkt. No. 7 at 2.) Petitioner remains detained at NWIPC. (Dkt. No. 2 at 1.)

Petitioner's version of events on the day of his arrest is slightly different. In an affidavit attached to his petition for writ of habeas corpus, Petitioner states that he experienced an "honest and involuntary human error" regarding the dates of his annual supervision check-in. (*Id.*) He apparently attended a check-in on June 7, 2025, and so believed his next appointment would be on June 7, 2026. (*Id.*) However, it had been scheduled for January 7, 2026; upon realizing his

---

[3] The record does not identify what the "CART" program is or what its parameters may be.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

mistake, Petitioner "voluntarily" went to the ICE office on June 8 "with the sole purpose of remedying the situation[.]" (*Id.*)  Petitioner was detained at that time.  (*Id.*)

On June 29, 2026, Petitioner appeared pro se before an immigration judge at a master calendar hearing and requested a continuance of his proceedings to find counsel.  (Dkt. No. 7 at 2.)  The immigration judge denied that request and set the case for an individual hearing on August 11, 2026.  (*Id.*)  Petitioner has not filed a bond redetermination request at this time.  (*Id.*)

**B.  Procedural History**

On June 29, 2026, Petitioner filed his petition for writ of habeas corpus and an accompanying declaration.  (Dkt. Nos. 1, 2.)  Also on June 29, the Court issued its standard scheduling order.  (Dkt. No. 4.)  On July 13, 2026, Respondents filed their return memorandum (Dkt. No. 6) and on July 22, Petitioner filed his traverse (Dkt. No. 9).

In his habeas petition, Petitioner alleges his re-detention after voluntarily appearing at the ICE office violates the Due Process of the Fifth Amendment.  (Dkt. No. 1 at 3.)  He notes he has "rigorously complied" with all immigration requirements, meaning that his detention does not bear a "reasonable relationship to the legitimate civil purposes of ensuring his appearance at proceedings or protecting the community."  (*Id.* at 4.)  He requests an order of his immediate release under reasonable conditions of community supervision.  (*Id.*)

In response, Respondents argue Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).  (Dkt. No. 6 at 2.)  Accordingly, Respondents apply the six-factor test from *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019) to conclude that Petitioner's continued detention without a bond hearing does not offend Due Process.  (*Id.* at 5–6.)

## II    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, Case No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III    DISCUSSION

### A.  Petitioner is Not Subject to Mandatory Detention under 8 U.S.C. § 1225(b)

Respondents assert Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), which applies to "applicants for admission" to the United States.  (Dkt. No. 6 at 2.)  Though acknowledging United States District Judge Tiffany Cartwright's decision in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), Respondents identify they disagree with Judge Cartwright and note that her decision was on appeal as of the date they submitted their response.  (*Id*.)  However, the Ninth Circuit has now affirmed Judge Cartwright and Respondents' position on this issue is squarely rejected.  *See Rodriguez Vazquez v. Bostock*, --- F.4th ----, Case No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026).

Respondents also identify that Petitioner was "paroled . . . into the United States under 8 U.S.C. § 1182(d)(5)" but offer no argument that Petitioner somehow should be automatically re-

detained because his parole terminated.  (*See* Dkt. No. 6 at 7.)  In fact, the record is devoid of any documents identifying when, precisely, Petitioner was paroled and under what conditions.  But even assuming Petitioner was paroled, such parole terminated no later than May 3, 2023, the date Respondents issued him a NTA.  *See* 8 C.F.R. § 212.5(e)(1)(ii) ("When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified.").  And after issuance of the NTA, Petitioner, by virtue of remaining at liberty and being allowed to attend immigration court proceedings, was considered not to be a flight risk or danger to the community.  *See Pablo Sequen v. Albarran*, 814 F. Supp. 3d 1005, 1033 (N.D. Cal. 2025) (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)) ("[I]f ICE has . . . placed [a noncitizen] in removal proceedings without detaining [him], it has necessarily already determined that the noncitizen is neither a flight risk nor a threat to the public.").  In short, there is no basis to conclude that Petitioner is subject to mandatory detention under 8 U.S.C. 1225(b)(2)(A).

### B.  Petitioner's Detention Violates Due Process

Having found that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A), the Court next evaluates whether his re-detention in June 2026 violated Due Process.  The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 6

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

### 1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Federal courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). An individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention. *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

Beginning at the latest on May 3, 2023, Petitioner remained at liberty subject only to the terms of his OREC. At that point, he maintained "a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Makuey*, 2025 WL 3640900, at *4. Petitioner was free in the community for over three years before he was re-detained. "[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). The first *Mathews* factor thus favors Petitioner.

2. Risk of Erroneous Deprivation

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. This factor too weighs in Petitioner's favor.

Here, the record identifies ERO officers believed Petitioner had an arrest for "narcotics distribution," leading to his removal from the CART program. (Dkt. No. 8-2 at 3.) The record contains no evidence of this arrest. ERO further believed Petitioner violated the terms of his OREC. But again, the record contains no information about which OREC terms were violated and a copy of Petitioner's OREC is not in the record. ERO also believed Petitioner has a pending charge in Oregon for delivery of cocaine. And once more, the record is devoid of any evidence supporting this conclusion. Accordingly, Respondents' proffered basis for taking Petitioner into custody on May 18, 2026 is not supported by the record. This means there is a

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

high risk that Petitioner was erroneously deprived of his private liberty interest.[4]  This is particularly true where no evidence was ever presented to a neutral decisionmaker that would justify a conclusion that Petitioner was a flight risk or a danger to the community.  Thus, the second *Matthews* factor weighs in Petitioner's favor.

### 3.  Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community.  *Zadvydas*, 533 U.S. at 690.  They also have a strong interest in enforcing immigration laws, but their interest in re-detaining Petitioner without a hearing is low based on the record presented.  *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  Although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents here offer no basis for the Court to conclude Petitioner's circumstances presented such an urgent scenario.  Petitioner asserts he voluntarily showed up at the ICE office in Portland after realizing his confusion regarding the date of his next check-in meeting, and it was not until that point was he detained.  (Dkt. No. 2 at 1.)  More tellingly, Respondents do not argue Petitioner is a flight risk or a danger to the community,

---

[4] The Court acknowledges Petitioner has a pending charge for possession of cocaine in Oregon. (Dkt. No. 9-1 at 7.)  But it appears the Multnomah County Circuit Court released Petitioner, which presumably means it concluded Petitioner was not a flight risk or a danger to the community.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 9

which supports the conclusion that exigent circumstances are not present. *See Sarwari v. Wamsley*, Case No. 2:26-cv-00121-TL, 2026 WL 279968, at *6 (W.D. Wash. Feb. 3, 2026) ("The fact that Respondents have not even alleged that Petitioner poses a flight right or represents a danger to any person undermines any suggestion that Respondents' interests must be satisfied immediately.").

On balance, the *Mathews* factors show that before Respondents could lawfully re-detain Petitioner, he was entitled to notice and an opportunity to be heard. *See U.-G. v. Woffard*, Case No. 1:25-cv-01564-JLT-SKO (HC), 2026 WL 279887, at *5 (E.D. Cal. Feb. 3, 2026) (citations and alterations omitted) (explaining that the "root requirement" of the Due Process Clause is an opportunity for a hearing before an individual is deprived of "any significant protected interest"). Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

#### IV    ORDER

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) day** of this order. Petitioner shall be returned to the conditions of release identified in his February 7, 2023 OREC (*see* Dkt. No. 7 at 2) unless otherwise modified by an immigration judge pursuant to Paragraph 2 below.

2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.[5]

---

[5] In the event Petitioner is re-detained, any claim by Petitioner that he has been unlawfully re-detained in violation of this order shall be presented as a new habeas petition. And if Petitioner

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 10

3. Within **TWENTY-FOUR (24) hours** of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.  The Clerk is further directed to calendar these events and close this matter.

Dated this 3rd day of August 2026.



David G. Estudillo
United States District Judge

is re-detained outside of this district, any claim by Petitioner that he has been unlawfully re-detained in violation of this order shall be presented as a new habeas petition in the district where Petitioner is physically located.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 11